[J-30-2025] [MO: Dougherty, J.]
IN THE SUPREME COURT OF PENNSYLVANIA
WESTERN DISTRICT

| | | |
|---|---|---|
| BETTY BELL, AN ADULT INDIVIDUAL, AND PROPEL SCHOOLS, D/B/A PROPEL CHARTER SCHOOL - HOMESTEAD, PROPEL CHARTER SCHOOL - SUNRISE, D/B/A PROPEL BRADDOCK HILLS, PROPEL CHARTER SCHOOL - PITCAIRN, AND PROPEL CHARTER SCHOOL - HAZELWOOD, | : : : : : : : : | No. 23 WAP 2024<br><br>Appeal from the Order of the Commonwealth Court entered January 31, 2024, at No. 1259 CD 2019, affirming the Order of Allegheny County Court of Common Pleas entered August 23, 2021, at No. GD 18-12950. |
| Appellants | : : | |
| v. | : : : : : | ARGUED: April 10, 2025 |
| WILKINSBURG SCHOOL DISTRICT, | : : | |
| Appellee | : | |

## DISSENTING OPINION

**JUSTICE MUNDY**                                    **DECIDED: JANUARY 21, 2026**

Section 1726-A(a) of the Charter School Law ("CSL"), 24 P.S. 17-1726-A(a), states, in pertinent part:

> Students who attend a charter school located in their school district of residence, a regional charter school of which the school district is a part or a charter school located outside district boundaries at a distance not exceeding ten (10) miles by the nearest public highway shall be provided free transportation to the charter school by their school district of residence on such dates and periods that the charter school is in regular session whether or not transportation is provided on such dates and periods to students attending schools of the district. Transportation is not required for elementary students, including kindergarten students, residing within one and one-half (1.5) miles or for secondary students residing within two (2) miles of the nearest public highway from the charter school in which the students are enrolled unless the road or traffic conditions are such that walking constitutes a hazard to the safety of the students when so certified

by the Department of Transportation, except that if the school district provides transportation to the public schools of the school district for elementary students, including kindergarten students, residing within one and one-half (1.5) miles or for secondary students residing within two (2) miles of the nearest public highway under nonhazardous conditions, transportation shall also be provided to charter schools under the same conditions.

24 P.S. § 17-1726-A(a). The majority finds the statute unambiguously allows a school district to force a "a five-year old [to] take two Port Authority Transit buses to get to school, ride with complete strangers, transferring once or twice, increasing the length of her commute, and then making the child do the same thing on the way home[,]" *Bell v. Wilkinsburg Sch. Dist.,* 313 A.3d 486, 2024 WL 358515, *7 (Pa. Cmwlth. 2004) (McCullough, J., dissenting), while providing students attending the district's own schools with school bus transportation. As I cannot agree with this conclusion, I respectfully dissent.

Contrary to the majority's reading of section 1726-A(a), Appellants Propel Charter Schools and Betty Bell (collectively "Propel") argue the statute is ambiguous on the question of whether public charter school students are entitled to equal treatment in mode of transportation. Specifically, Propel argues the second sentence of paragraph (a) "is a disjointed mess of misplaced modifiers, exceptions, and provisos." Appellant's Brief at 20. Pursuant to Propel's argument, the majority's interpretation of the statute renders the phrase "under the same conditions" in the statute's second sentence redundant. *See id.* at 22. In order to give meaning to the entirety of Section 1726-A(a), including the "under the same conditions" language, Propel contends the proper interpretation is

[S]tudents who attend a charter school located in their school district of residence or a charter school located outside district boundaries at a distance not exceeding ten (10) miles shall be provided free transportation by their school district of residence to their charter school when such charter school is in session and under the same conditions as free transportation is provided to students who attend schools of the district when schools of the district are in session.

*Id.* at 24-25. Under Propel's reading, since the Wilkinsburg School District (the "District") provides students attending its own schools with school bus transportation, Section 1726-A(a) requires the District to also provide qualified public charter school students with the same school bus transportation, rather than forcing those students to commute using public transportation. In my view, Propel's interpretation is eminently reasonable, at the very least as reasonable as the majority's interpretation, rendering the statute ambiguous. *See Warrantech Consumer Products Services, Inc. v. Reliance Ins. Co. in Liquidation*, 96 A.3d 346, 354-55 (Pa. 2014) ("A statute is ambiguous when there are at least two reasonable interpretations of the text under review.").

In light of that ambiguity, we must resort to the tools of statutory construction to ascertain and effectuate the General Assembly's intention. *See* 1 Pa.C.S. § 1921(c); *Ursinus College v. Prevailing Wage Appeal Board*, 310 A.3d 154, 171 (Pa. 2024). In conducting a statutory construction analysis we consider, *inter alia*, the object to be attained, the former law, including other statutes upon the same subject, and the consequences of a particular interpretation. 1 Pa.C.S. § 1921(c)(4), (5), and (6). As evidenced by Judge Wallace's excellent recitation of Section 1726-A(a)'s history and our interpretation thereof, consideration of these factors makes clear that the General Assembly's intent in enacting this section was to provide charter school students with the same transportation options as their peers attending traditional public schools. *See Bell*, 2024 WL 358515 at *7-9 (Wallace, J., dissenting). In other words, if a school district provides students that attend its schools with school bus transportation, Section 1726-A(a) requires that district to also provide school bus transportation to qualified charter school students rather than forcing those students to commute to school on public transportation.

Additionally, again as aptly explained by Judge Wallace below, the majority's alternative interpretation of the statute raises serious constitutional issues

> because it may result in similarly-situated public school students receiving unequal treatment or in public school students receiving demonstrably worse treatment than students attending religious schools. *See, e.g., William Penn Sch. Dist. v. Pa. Dep't of Educ.*, 294 A.3d 537, 946-57 (Pa. Cmwlth. 2023) (Cohn Jubelirer, P.J., single-judge op.) (recognizing public education as a fundamental right and applying strict scrutiny review in the context of an equal protection challenge); *Springfield Sch. Dist., Delaware Cnty. v. Dep't of Educ.*, 397 A.2d 1154, 1160-66 (Pa. 1979) (concluding Section 1361 did not violate the Establishment Clause, U.S. Const. amend. I, because, among other things, it did not have a primary effect of either advancing or inhibiting religion). Where, as here, we may interpret a statute in multiple ways, it is our duty to avoid an interpretation raising "grave and doubtful constitutional questions." *Commonwealth v. McClelland*, 233 A.3d 717, 735 (Pa. 2020) (quoting *Commonwealth v. Veon*, 150 A.3d 435, 443 (Pa. 2016)).

*Id.* at \*9 (footnote omitted).[1]

For these reasons I respectfully dissent and would find that the District violated Section 1726-A(a) by not providing qualified public charter school students with school bus transportation while providing such transportation for students attending the District's own schools.

---

[1] I additionally agree with Judge McCullough that the majority's interpretation "is at best unreasonable, and at worst absurd." *Bell*, 2024 WL 358515 at \*7 (McCullough, J., dissenting). As I find the statute ambiguous, the unreasonableness of the majority's interpretation militates towards adopting Propel's alternative reading. *See* 1 Pa.C.S. §1922(1) (It is presumed "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.").